312.956, consolidated 312.957, and consolidated for Oral Code 313.0054, in the name of the Father, the Son, and the Holy Spirit, amen. God bless you, Mr. Hertzberg, and you're a believer of the law and the truth, amen. Thank you, Your Honors. May it please the Court, tell me. My name is Bruce Furman. I represent all three defendants in these consolidated appeals. Rogers, Hertzberg, and Harold Weaver all were convicted following security bench trials of cannabis trafficking, and all have been sentenced separately to 12 years in the Department of Corrections. The reason that I moved to consolidate these cases for appeal is because the State has argued in both cases that because what occurred was called by the judge and agreed to by both myself and the Assistant State's Attorney, a stipulated bench trial ante-matter to a guilty plea, that therefore the Rule 605 with regard to taking appeals where there has been a guilty plea applied. And I think that one of the things that we appellate advocates fear the most is that we will make our best argument in the car on the way home. That's a line that we're all afraid of, and I'm going to try to avoid that right now by telling the Court that I think that my best argument may not be sitting in my brief, or at least wasn't stated as well in my brief as I hope to state it here now. The key word for me is the word ante-matter. It's a lovely word. It means essentially like but not the same as. And that's exactly what happened here. This was a stipulated bench trial that was for all purposes regarding Rule 402 the same as a guilty plea, but it's still not a guilty plea. The difference being that in a guilty plea, the defendant is giving up all of his defenses. The defendant's plea is stating the state has been proven guilty, a factual basis set forth by the Court, and the defendant gives up all of his defenses. In a stipulated bench trial, the defendant gives up all of the defenses that Rule 402 requires the Court to tell the defendant that he's giving them. And that is what happened here. As you'll see, Judge Stengel did indeed admonish all of my clients that you have the right to counsel, you have the right to a trial by a jury, you have the right to confront the witnesses against you, you have a right to a jury trial or a bench trial, and most importantly, you have the right to remain silent and require the state to prove you guilty beyond a reasonable doubt. Those are the things, that's what Rule 402 is for. It's to make sure the judge admonishes the defendant of all of the rights that he's giving up when he pleads guilty. A defendant in a stipulated bench trial does the same thing. The act defendant gives up all of those rights, but they're not pleading guilty. They are preserving the defense that was raised in all of these cases, that the state somehow violated, through the police, violated the Fourth Amendment either through an improper search or an improper seizure of their persons. My understanding, and I'm pretty sure the Assistant State's Attorney and Judge Stengel's understanding, is that's what was happening here. The defendants were giving up all of their rights to contest the evidence, which makes perfect sense, since, again, the court may not be privy to this because it's not going to be part of the record, but all of the defendants told the police that they were carrying in excess of five, they were in possession, no in possession of in excess of 5,000 grams of cannabis, and that they brought it in from another state, the state of Illinois. As far as cannabis trafficking, that is a non-probationable class X felony with a minimum 12-year term in the Department of Corrections. That's what all of the defendants got sentenced to because that's what we agreed upon prior to the stipulated bench trial. I believe I cited the appropriate case law showing that a stipulated bench trial is not the same as a guilty plea when you are preserving a defense, and that's all we sought to do in those cases, was preserve a defense. When you're appealing from a plea of guilty, you have to file these motions as required by Rule 605 because at that point you haven't preserved anything. You may have filed a motion to withdraw your guilty plea that was denied. You may have been sentenced to something that at the time you were sentenced in your guilty plea, assuming it was an open guilty plea, you may have been sentenced to something that was unlawful or inconsistent with the statutory sentencing scheme. Therefore, Rule 605 requires in that circumstance for you to file a motion prior to taking an appeal. When you're doing a stipulated bench trial and you have already preserved the defense that you have, there is no other motion to file at that point. There's nothing that I'm asking the court to do that the court hasn't already done. So for those reasons, Judge, I think the key word again is tantamount. What happened here is not a guilty plea. It's tantamount to a guilty plea for Rule 402 purposes and for Rule 605 purposes. It's not a guilty plea. It's a stipulated bench trial where we're admitting that the state can prove all of the things that the state says it can prove, and we're simply preserving our defense. So at least at this point, I think the court should proceed to that. Let's assume that you did that in the various exchanges. Is there another issue in terms of stipulating the facts as opposed to acceding to the state's presentation of the facts? I think that may be a distinction without a difference because I believe that part of the court's admonition to the defendants in this case, and any time we would do a stipulated bench trial, is that the state would present, and I'm sure the state did present in this case. At least I recall what they presented. This is what we found. This is what you told the police. They did your basic factual basis for the plea. So whether I or my client said, yes, Your Honor, I stipulate that those are the facts of the case or that is the evidence, either way, that's what happens when you do a stipulated bench trial. You're saying that this is the case, this is the state's evidence, and we are not confessing. We're not putting on any evidence of our own. I'm not cross-examining a police officer, or I'm certainly not questioning the state's attorney's recitation of the facts. So I'm not entirely sure. I mean, I've read the cases, too, and I understand that some of the cases turn on what actually occurred as far as the state putting their, you want to call it, putting their evidence on, or the defendant conceding the evidence. Either way, I think the record will clearly reflect in this case that there was no factual context to any of the charges. All that was happening was the defendants were admitting that the evidence would establish their guilt of cannabis trafficking, and they simply wished to go to the next step, which is to appeal from the denial of either their motion to quash or their motion to suppress.  I'm not sure that it did, but that's what I said. With respect to the merits of each of the appeals, I'm going to take them in the order that I prepared. So I'm going to discuss Mr. Weaver's case first. One of the things I want to emphasize in the report about this case is that despite what Judge Stengel said as part of his decision, in the case, this is not about the credibility of Trooper Verizon. This is not, nor about the credibility of my client. My appeal essentially takes Trooper Verizon at his face value, which is that he stops the vehicle for the reasons stated. Not the best reasons, but those are the reasons that were stated. I'm not challenging the stop itself. Approaches the vehicle, asks him to do the usual things, provide the paperwork, rolls down the window, slid in his paperwork, and testifies that the first thing he notices, at least as far from the olfactory point of view, is the smell of either fabric, softener, or a dryer sheet. Okay, that's, in my mind, that's what's in plain smell at the moment. But, again, that's part of the case. I'm not questioning that he, in fact, smelled that, because as the court will figure out pretty soon, that's what they found when they got into the trunk of the car and found the actual canvas, is that there was actually dryer sheets. So I'm certainly not contesting that actual part of it. Nor am I questioning the fact that Trooper Horizer may have detected exactly what he did detect. Once he was given consent to search the passenger compartment of the vehicle, and that was what his consent was limited to, exactly, once he gets into the passenger compartment of the vehicle and starts poking around and sniffing around and gets towards the back of the back seat, I'm not challenging his testimony. And the factual determination by the court that he detected a faint odor of canvas. What I'm challenging is the legal significance of what happens when you detect a faint odor of canvas. Because without this faint odor of canvas, there's no lawful basis for any further search of the vehicle. The consent was limited to the passenger compartment of the vehicle, so he didn't have consent to search the trunk. There was nothing in plain view, and none of the other typical warrantless exceptions to the warrantless requirement apply. No exigent circumstances, this is not an inventory search, nothing like that. So what he has to have is he has to have probable cause based upon what he smelled. And the courts have been very clear from the Stout case to the Smith case that we do have a plain smell doctrine in the state of Illinois. Some states don't, but Illinois does. The question is, what does that mean? And what I've tried to emphasize in my brief and what I'd like to emphasize today is that it's plain smell and plain sight or even plain sound or plain sense, whatever it would be, these aren't freestanding doctrines that just came out of nowhere. They're all part of the concept of probable cause. The reason that an officer can seize an item in plain sight is because he has probable cause based upon what he sees to believe that criminal activity may be involved. The reason an officer has probable cause to search a vehicle when he smells a plain odor of cannabis, when cannabis is in plain sight, is because he has probable cause to believe that a defendant is involved in illegal activity. But now we're getting to the metaphysical part of the case, which is how much? What is plain sense? What is probable cause? And I think that there has to be a demarcation point here. Lots of states of knowledge fall short of probable cause, especially in the realm of the Fourth Amendment and criminal law. There is something far less than probable cause called suspicion, whether it's reasonable or articulable suspicion or just plain old hunched speculation suspicion. There are states of sensory states, sight, smell, sound, which might cause an officer to think, possibly there might be something more going on if I investigate further. But that's not what probable cause is. Probable cause is a set of facts that would cause a reasonable person to believe that criminal activity may be involved. So let me see if I can draw a comparison here. If we're talking about plain sight, if I'm an officer sitting in my vehicle and perhaps I don't have my radar on, and I see a car go by that I think might be exceeding the speed limit, but I don't have my radar gun on, and I've got a good idea that it may have been driving a mile or two over the speed limit, is that probable cause or is that suspicion? Again, what is he seeing? Is the speed of the vehicle something that someone just sitting there without a radar gun can say, that's in plain sight? Well, the car is in plain sight, but is the illegal aspect of the car's activity, that is, a speed a mile or two over the speed limit, is that in plain sight? Would this case be different hypothetically because you're not contesting the veracity of his statement that there was a slight odor, I think, what were the words? Faint odor. Faint odor. You're not questioning the veracity of that? Correct, I'm not. Okay. If he were to say in his experience that combined with an odor of detergent dryer sheets? Same problem, Judge. I think, again, it goes to my problem with the concept of plain. Well, but he did testify, I mean, somewhere, at least in your brief you mentioned, rather than faint smell, he was more definitive about an odor of dryer sheets, detergent. I have no doubt about that. In fact, that was what he smelled as he passed the vehicle. Right. The point I'm trying to emphasize is that those two facts stand in contrast to one another. He clearly smelled dryer sheets or something. He said dryer sheets of fabric, so maybe he wasn't quite clear, but we also know that smelling dryer sheets and fabric softener is not going to be a probable cause because there's nothing illegal about having dryer sheets. Well, but what if that's the combination of the two? Well, the combination of the two might be a different story, but that's not what the judge relied on. The judge relied upon the fact that he believed that Schubert Verizon smelled what he smelled and that that was good enough. I'm not questioning that he smelled what he smelled. No. I'm questioning whether it's good enough. You're talking the quantum, aren't you? Only when it comes to the cannabis, though. I'm not talking about a totality of the circumstances situation here. Okay. I don't think that's a different case. Thank you. I guess I'm going to switch gears here because I have two elderly clients facing along the Department of Corrections, and I think they might like me to say a few things. I am going to have to commend the court to the security camera video in this case, in the Hertzberg case, although it doesn't show a lot because it's taken from a bit of a distance. But I think the key to Hertzberg is to not overly lock in on the specific factors set forth in the Mendenhall and Lutheran cases. That the concept of what's a detention, what a reasonable person would believe under the circumstances, is not a laundry list situation. It can't just be the officer, has the officer got a gun, has he got a weapon, has he got a marked car, did he show force, did he act in a disrupting manner? Those are things that matter, but it's not all that matters. And I think there are some very, very unique aspects to this case. The first of which being the officer's appearance, kind of out of the blue. The videotape shows it better than I can explain it, is that these people come into the Walmart and then all of a sudden coming from a corner of the Walmart parking lot, comes this car that pulls up next to them in a spot that's not a parking lot, and the officer seems to want to talk to them. These people are driven, again, they're driving from the west coast, they've stopped to go to the bathroom at Walmart, and all of a sudden here comes this police car. And the police car, the officer does something, the record is unclear as to what he does, but he does something to cause the driver of the car, Susan Hertzberg, to have an encounter with him. And what I'm asking the court to do is to place these acts in context. The officer tells her there's a problem, there may be a problem with the registration of the vehicle. Tells the driver more than just there may be a problem, it's that this officer seems rather interested in my car, even though as far as I can tell I'm driving my car down the highway, off the interstate, stopped to go to the bathroom. Why is this officer interested in me at all? Does that make this, does that unique set of facts make this encounter less voluntary? I think so. I think it does. I think the juxtaposition of the vehicles makes it less voluntary than it might otherwise be. Thank you. The final thought is the fact that the officer never tells me that, even though his initial interest in me has to do with the fact that my registration doesn't matter, the registration that he called in doesn't match my license plate, he never tells me that he has somehow in his own mind resolved that. He never tells me I'm free to go, and I can understand that from the voluntary encounter cases that he doesn't have to tell you that, but that is one fact that I think should be added up. Just the very strangeness of this encounter is why I'm asking the court to not limit itself to the Mendenhall and Ludeman factors as far as whether this is a voluntary encounter or a detention. Was this registration license plate discrepancy, was it ever resolved or was it really a discrepancy? Well, I think what, I want to make sure I don't go outside the record here, I believe that Sergeant Kuhling testified at some point that he gave the wrong letter to his person. So that's how it didn't come back to them. But I don't know if before the arrest that got figured out, but I know that eventually that got figured out. Okay, thank you. Any questions about pre-texting? I don't have enough time to talk about pre-texting. Thank you. Thank you very much, Mr. Carman. And Ms. Kelly? Thank you. Thank you. May it please the court, counsel, to go in reverse order. The, whether or not there was a detention is an objective test, an objective evaluation of the police conduct not upon her subjective perception. So, and that's the way it has to be. And the courts have told us what the indications are that there's a detention or a seizure. None of those indications are present in the instant case. An objective view of this office's conduct shows that it was a consensual encounter between them. With regard to the license plate, I'd never heard anything about a wrong digit being given. I thought that what he stated in his testimony was that when he put it through dispatch, he got different registration vehicles, and he was aware that in some western states, and particularly with specialty plates such as handicap plates, that the dispatch system just wasn't as accurate as he was used to. And he accepted her explanation that, in fact, this was the car, that they were the owners of the car. And he was satisfied. He told her at some point he was satisfied with the explanation that she had given with regard to the plates, though that was what had originally drawn his attention to going over it. So, objectively, she was free to go at that point? Absolutely. She was free to go at any point. And going back now to Wait a minute. At any point? Was she required to give ID to an officer? I don't believe she did. As far as I recall, I don't believe she did. Because I think she was in the car when he pulls up next to her. He says, good morning. She gets out of the car. I don't recall that she's holding anything. She simply goes back in after he asks for consent to look in the tunnel, or whoever you pronounce that. And then she goes in and gets the key. So I don't believe he did. Until she gets the key, she goes to the back, she unlocks the locks, and then he does help her open it because he's taller, and he sees the canvas, and at that point she's no longer free to leave. And I hope that the video is able to give you the DVD so you can see the progression of this here. To jump back to the Weaver case, you can't quantify smell. In this case, this is an experienced officer who's done a lot of drug interdiction, a lot of education on drug interdiction. Of course, his suspicions are aroused when he smells the dryer sheets, because most of us do not go around with fabric softener sheets in our car, and a very heavy odor of that. And although he honestly said at that point that was all he could smell was the fabric softener sheets with the window being open. And then he has a conversation with the defendant, and he writes him a warning ticket, and he does tell him he's free to go. And then he gets his attention, which answers some questions. Now, I have a bit of a problem because the attorney who wrote the brief is on a leave of absence, and there was something in the brief, and I did not have access to the record, that neither the defendant mentioned in his brief nor the judge mentioned in his findings. But there's a reference in the brief that on page R19 of the record, when the officer is asking him questions, you know, why did you drive rather than fly to your destination, and do you have anything illegal in the car? And I think the import from what she says on page 19, he's asking about different drugs, and when he asked if there was cannabis in the car, the defendant answered yes. I don't know if that's borne out by the record. I would invite the court to check on page R19 of the motion to suppress and see if that's borne out by the record. If, in fact, that's borne out by the record, I believe that is a probable cause to search the car. But the defendant doesn't mention it, the judge didn't mention it, at least in the findings that were contained in the record. So going on to the argument that the defendant did make, that he answered no to the questions, and when asked, do you mind if I search your trunk, the defendant initially said yes, and then he changed his mind and said no, and he said, well, do you mind if I search the car? The defendant agreed, opened the rear door for him, and then the officer asked the defendant to go to the spot car, and when he was in the backseat of the car, finally he was closer to the 26 pounds or whatever it was of cannabis, where he could smell the odor of raw cannabis. He characterized it as a faint odor, as had been the defendant's intention. I assume that the dryer sheets were overwhelming the odor. But he said that he smelled the faint odor of raw cannabis. The judge believed him. The defendant has accepted that testimony. I believe the case law does not make a distinction in the strength of the odor or the strength of the odor that the officer testifies to. Any amount of cannabis is still illegal to possess in the state of Illinois. He goes back to the defendant at that point, and he tells him what he smelled, and then he gives him his Miranda warnings, and then he asks him directly, will I find, you know, I'm going to search your trunk, will I find cannabis in the trunk? And the defendant tells him yes at that point. So I think that the case law is clear. The people have cited the cases, including Stout and then the Smith case, a more recent case where it was a slight odor, and it turned out to be some leaky green substance in a wound up tissue inside of a pill bottle. Now here we have pounds of marijuana. So it seems to me that the officer, even though he obviously characterized it as a faint odor, that is certainly enough to provide probable cause to search the vehicle. The entire vehicle, any place where it could be for the cannabis. And then back to the first issue. I understand that all parties intended to enter into a stipulated bench file so as to preserve the issue of the motion to suppress for appeal. However, the case law and our Supreme Court in Horton, they do make a distinction. It's not a distinction without a difference. Horton has consolidated two cases, and in the second case where the defendant clearly meant to preserve his suppression issue for appeal, he stipulated that the evidence was sufficient to convict. And our Supreme Court has told us that to preserve the issue for appeal in a stipulated bench file, you can stipulate that that's the evidence that the people will present. But you cannot stipulate that the evidence is sufficient to convict. That's what was done here. That's why the people have made the argument that this was, in fact, a guilty plea. They were told it was tachymetrically a guilty plea. Everybody signed off on that. They agreed that the evidence was sufficient to convict the unreasonable doubt. Therefore, under Horton, under the second case in Horton, which we've highlighted in our brief, that means that it was a guilty plea and that the defendant must follow Rule 604D and 605. Would you preserve that stipulation protection if you said it's sufficient to convict if admissible? I mean, admissible because the motion is correct? Well, for any reason. I think when you're stipulating, you're stipulating that this is the evidence that the state will present and I will present none, and that's the end of it. I don't know. I've not been faced with the situation of where— Well, if you stipulate this is the evidence to present, don't you preserve it? Yes. Right, but— It's a magic word. If you stipulate that the evidence is sufficient to convict, that's what the Supreme Court has told us is a distinction. If admitted. I've not seen a case that discusses it. I know, but I'm just bringing that as a positive there, a hypothetical. You'd probably preserve the stipulation that way because— Perhaps. Obviously, it can be felt to be admissible—I mean, it's admissible, rather, for a number of reasons. Right, including the reason that you're preserving it. Foundational reasons as well as suppression. That's not what happened in this case. Under what happened in this case, under the case law, we believe that there's no jurisdiction for this court to hear the appeal because it was a guilty plea and there was no compliance with the condition present to appeal from a guilty plea. So you're saying under this rule, under this application of the rule, that the defendant does not get to present the merits of his appeal. That's correct. People's position initially is that the court lacks jurisdiction. This does not comply with the Supreme Court rules governing appeal from a guilty plea. Because of the stipulation that it's sufficient to convict. That's correct. Because of those words. That's correct. What's interesting is it does not usually come up in the context where the people are arguing it. It is often the defendant looking at the stipulated bench trial and saying on appeal, this is tantamount to a guilty plea and I didn't get my four or two admonitions or it has to go back. But the rulings, the holdings are the same. Has it ever come up prior to this case or in a decided case? I think it was, as I said, the Horton case. Where the defendant? Intended to preserve a defense but didn't. Yeah. I think the second of the Horton cases, that was two consolidated cases, and in the second one the court said that it was, since he didn't, he did stipulate the sufficiency of the evidence to convict that that was tantamount to a plea and they could not raise it. But I don't think any cases picked up on that since, no. Could not find it in the context in which the people are arguing it. Any questions? You are? I'm done. Complete. I do have a question. Yeah, don't you too. Please. If this case passes the medical marijuana law under the facts of the first case and the officer is told, yes, there's cannabis in and I'm permitted to use it for medical purposes, can the officer go any further? That's an interesting question. I don't know. I think the officer could find it and then she would have her defense. I have a case actually where somebody had said here's my card from California. Yeah, because other states have it. Right. And the answer was that's no good here. That may change when the new law. Right. If it's good here or an Illinois card is good here. Right. That becomes a different. Fair. Yeah. Okay, thank you. Thank you. Thank you, Mr. Conner. Mr. Conner. To answer Dr. Calder's question, I think California still plays by the same rules even with medical marijuana. I think the officer still has probable cause when he smells marijuana. If you have a medical marijuana card, that may be wonderful, but that doesn't help you when you're in a car. I think I've seen that case in the last couple of years. Mr. Conner, please speak to the jurisdiction as Ms. Kelly laid it out. It's been laid out in the briefs, and I think that one of the things that Ms. Kelly has pointed out, I think the courts in the Chapman case said when you are preserving a defense, that's not a guilty plea. It may be, as I said, the key word is tantamount. It's tantamount to a guilty plea for purposes of Rule 402. So when a defendant appeals from one of these situations, that's taking a different tack. I think, and in fact she admitted that the preservation of the issue was there, and that wasn't the issue. It's the other half of that coin that the defendant cannot stipulate to those facts as being sufficient for conviction. Because that somehow turns it into a guilty plea. And if you stripped out a couple of words from that sentence and just simply said, you know, we agree that there was stipulated that the state will present this evidence and leave it at that. Well, that's quite a trap for the unwary, isn't it? It's a terrible trap. I mean, I'm not saying it's not. And I'm not saying I didn't fall into it, but I think we all understood what was going on there, and I think the fact that Judge Stengel, for example, stayed the sentence pending appeal and admonished me to make sure I didn't take lots of extensions, because that's the basis he was going to allow my clients to stay out there, there was no understanding of any further proceedings going forward. And if the court exceeds to Ms. Kelly's argument, I think the remedy is to remand the case so that I would have to file a motion and then we'd come all the way back here and start over again, which is not going to be a rather cost-inefficient way of doing things. I understand we're talking about rules here and we have to follow rules, but I think the key word again, and I'm sorry for redirecting him back there, Judge, is that the whole point of the stipulated bench trial tantamount to a guilty plea is to make sure the trial judge admonishes the defendant pursuant to Rule 402, that he's giving up all, by doing this, by whether he's stipulating to the sufficiency or stipulating a state that could produce all this evidence, what he is doing is giving up those rights that the judge has to admonish you that you're giving up under Rule 402. What are you really stipulating in a stipulated bench trial? You're stipulating that the evidence is sufficient to prove your client's guilty of the charges levied. That's exactly what you're stipulating because that's how you get a conviction. You're stipulating that the state can prove that your client was in knowing possession of an excess of 5,000 grams of cannabis and brought it from another state into the state of Illinois. That's all the woman's eye know of cannabis trafficking. I mean, you said that again, and that would not be under these Supreme Court cases. That would not be the condition. You would be stipulating only that the evidence that the state is presenting is the evidence that would be presented. And you're not taking that extra step and saying it's enough to find him guilty or them guilty. But the point I'm trying to make, Judge, is that the reason that the rules care about whether this is a guilty plea or whether it's a stipulated bench trial is for the purpose of admonition. That's the whole key to rule court. Oh, I understand that. But these cases, and they're not, as Ms. Kelly admitted, I mean, they're not normally cases that are used against the defendant. Right. And it's an interesting take on the use of that case to deny the defendant the right to free word. If I use the word hyper-technical, would the court disagree with me? No, but that's my question back to stipulation. I mean, if we, as Ms. Kelly has outlined, the distinction between the two, and the magic words, so to speak, okay, I've always been bothered, and I was a trial judge, by how can the defense stipulate what the state's going to do? Why would you even believe the state to give the defense? It happens. Every day it's happening right now. Well, the reason it happens, Judge, is because my clients were subject to a sentencing range of 12 to 16 years. No, no, I'm not saying why they would stipulate. I'm saying how could they cognitively stipulate that that's what the state's going to present? You're going to have to step the state somewhere along the line. Is that a technical question, Judge, or are you asking me? Well, it's always bothered me. Isn't the whole premise in this type of a situation that, you know, you've already, you've had your motion to suppress, and once that was not the outcome that you had hoped for, there is nothing else. I mean, they've got 26 pounds. It's in the vehicle that, you know, that was your client's. So the whole idea of having the rest of the trial and having all this cross-examination really doesn't serve any purpose because in order for your clients really to be successful, you know, it's what happened at the beginning, and you've already, that's already been decided, and in order for you to get the chance to appeal it, you've got to get through the rest of it. I mean, isn't that the whole idea? Yes, of course. You're appreciating the client very directly. I mean, isn't that what Thompson was going to say, the sentencing enhancement, you know, or the constitutionality of those things? Those are things that prevent this from being a guilty plea. The fact is, Judge, I do a lot of these kind of cases, and if you don't win your motion to suppress 99 times out of 100, you don't have much else, and that's why I brought, going back to the circle of what I argued in the beginning, what motion is it the judge wants me to, what is it the court wants me to file at that point? I'm not seeking to change anything about the court's decision except legal determination that the motion to suppress or the motion to cross should be granted or denied. May I ask the court for another minute to address one or two of the things that Ms. Kelly brought up on the substance? One more minute. Thank you, Judge. When you go back and look at the record about what my clients responded, and regarding what drugs were in the car, I believe what Trooper Verizon testified was he asked them about a litany of drugs. Do you have cocaine? Do you have opium? Do you have heroin? No, no, no. And then he gave you different kinds of no. I think he shook his head or said nope. And, of course, the trooper caught great significance in that, but I don't believe my client ever said yes, there's cannabis in the car, until after the officer had smelled the drugs and said, you've got drugs in your car, don't you? And I pointed all that out in the footnote to my brief. The Smith case that Ms. Kelly mentioned, they did allow a search on a pain odor, but nobody argued this sort of metaphysical question that I've quoted about what is faint good enough to be plain. And the key word is plain. It's not the officer's smell. It has to be in plain smell because that's tied into the notion of prior cause. Thank you. Thank you, Mr. Kramen. Thank you both for your arguments today. It's a very interesting issue. Well, all of them are interesting issues. We will take this matter under advisement to get back to you with a written disposition within a short day. And we'll now take a recess for lunch.